

```
DISTRICT COURT OF THE VIRGIN ISLANDS
   DIVISION OF ST. THOMAS AND ST. JOHN
          APPELLATE DIVISION
```

UBENICO ARISMENDY,                )
                                  )
    Appellant,                    )
                                  )
        v.                        ) D.C. Crim. App. No. 2004-144
                                  ) Re: Super. Ct. Civ. No.:F121/2003
                                  )
GOVERNMENT OF THE VIRGIN ISLANDS  )
                                  )
    Appellee.                     )
_____)

On appeal from the Superior Court of the Virgin Islands
The Honorable Ive Arlington Swan presiding.

Considered: October 29, 2007
Filed: July 26, 2010

BEFORE: **CURTIS V. GÓMEZ**, Chief Judge of the District Court of the Virgin Islands; **RAYMOND L. FINCH** Judge of the District Court of the Virgin Islands; and **DARRYL D. DONOHUE**, Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.

ATTORNEYS:

**Archie Jennings, Esq.**
St. Thomas, U.S.V.I.
    *For the appellant.*

**Maureen Phelan, Esq.**
St. Thomas, U.S.V.I.
    *For the appellee.*

# MEMORANDUM OPINION

**Per curiam.**

Ubenico Arismendy ("Arismendy"), appellant, was convicted of attempted murder, assault, possession of a deadly weapon, aggravated assault and battery, and mayhem. Arismendy now appeals the judgment of the Superior Court and requests a new trial.

## I. FACTS

On April 4, 2003, Arismendy was at home with Kimbra Willett ("Willett") and her three children. Willett was Arismendy's fiancée who was also pregnant at the time. That evening, Arismendy and Willett relaxed in front of the T.V. and drank beer and smoked marijuana. Arismendy told Willett that he wanted to have sex, but Willett refused and continued to watch T.V. Arismendy left the room and returned with a machete. Arismendy attacked Willett with the machete from behind. Arismendy struck Willett in the head with the machete approximately three times, causing Willett to suffer severe lacerations to her head. During the attack, Willet was able to grab the machete. As a result, she also suffered severe wounds on her palms, including a partially severed finger.

Raheem Willett ("Raheem"), Willett's eleven year old son, ran to his mother's aid. Raheem was able to wrestle the machete from Arismendy. Arismendy then grabbed Willett's throat and proceeded to strangle her. As Raheem tried to pry Arismendy's hands away, Willett was able to escape Arismendy's hold. Willett told the children to hide and fled from the house. Willett drove to the police station to get help. The police came to the home and found Arismendy in Willett's bedroom, where Raheem had locked him.

Arismendy was arrested and charged in a fourteen count amended information. He was charged as follows: Count I, attempted murder in the first degree; Count II, assault in the first degree; Count III, assault in the first degree; Count IV, mayhem; Count V, mayhem; Count VI, possession of a deadly weapon; Count VII, assault in the third degree; Count VIII, assault in the third degree; Count IX, assault in the third degree; Count X, assault in the third degree; Count XI, assault in the third degree; Count XII, aggravated assault and battery; Count XIII, aggravated assault and battery; and Count XIV, aggravated assault and battery.

On March 21, 2004, Arismendy's counsel went to the Bureau of Corrections ("BOC") to meet with him regarding a plea offer from the Government. Defense counsel was accompanied by an

interpreter. The guards at the BOC refused to allow access to the interpreter. This incident was brought to the attention of the Court in a post-trial motion to enforce the plea agreement or for a new trial.

During the discovery phase before trial, the prosecution exchanged materials with the defense, but failed to disclose to the defense that Willett had a prior arrest from 1999. The prosecution also failed to disclose that Willett had had prior contacts with the prosecutor's office. Willett had contact with a prosecutor during the prosecution of an unrelated criminal defendant in 2001 and 2002. She also was in contact with the V.I. Police Department and with another prosecutor in relation to Arismendy's case.

At trial, several witnesses identified Arismendy as Willett's assailant. Arismendy presented an insanity defense, claiming that the mixture of alcohol and marijuana distorted his perception. Dr. Lino Lapenna was called as an expert witness to testify regarding Arismendy's psychiatric evaluation. During closing arguments, defense counsel commented that the psychiatrist's report indicated that Arismendy did not have the capacity to commit the crime. On rebuttal, the government argued that nothing in the report indicated that Arismendy suffered from a mental disease at the time of the incident.

The jury returned a verdict of guilty on Counts I, II, IV, V, VI, VII, VIII, IX, X, XII, and XIII. On June 23, 2004, the Court sentenced Arismendy. Arismendy's sentence was complex. First, Arismendy was sentenced to 25 years for count I, attempted murder. For counts II, IV, V, and VI, he was sentenced to 15 years in prison for each count, to be served concurrently with each other and with the sentence for count I. His conviction for each of four counts of assault in the third degree was five years, to be served consecutively to each other, for a total of 20 years. The assault sentence was to be served concurrently with the sentences for counts I, IV, V, and VI. For each of counts XII and XIII, aggravated assault and battery, he received a one year sentence, to run concurrently with the other sentences. Arismendy was also fined $3000, which included $500 each for Counts VII, VIII, IX, X, XII, and XIII. Arismendy was also ordered to pay Court costs in the amount of $75.

On July 30, 2004, Arismendy timely filed a notice of appeal. Arismendy raises two issues on appeal: (1) whether the misconduct of the prosecutor's office in failing to disclose impeachment evidence, preventing access to counsel, and making improper remarks at trial was plain error warranting a new trial; and (2) whether the trial court abused its discretion in imposing cumulative sentences for the convictions for assault in the third

degree, which he argues should have merged into the first degree assault conviction.[1]

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction to review criminal judgments and orders of the Superior Court in cases in which the defendant has been convicted, and has not entered a guilty plea. *See* V.I. CODE ANN. Tit.4, § 33; Revised Organic Act of 1984, 28 U.S.C. § 1613(a).

Allegations of prosecutorial misconduct, to which no objections are made at trial, are reviewed for plain error. *United States v. Morena*, 547 F.3d 191, 193 n. 1 (citing *United States v. Olano*, 507 U.S. 725, 731 (1993). The standard of

---

[1] Under Federal Rule of Appellate Procedure 28, the appellant's brief is required to contain a statement of the issues presented for review, as well as a "summary of the argument, which must contain a succinct, clear, and accurate statement of the arguments made in the body of the brief . . . ." FRAP 28(5), (8); *see also Simmons v. Philadelphia*, 947 F.2d 1042, 1065 (3d Cir. 1991) ("absent extraordinary circumstances, briefs must contain statements of all issues presented for appeal, together with supporting arguments and citations" (citation omitted)).
Arismendy's brief contains a brief discussion regarding multiplicity, which does not obviously correspond to his statement of issues on appeal. Where, as here, an appellate fails to set out the issues raised for resolution on appeal in an "issues presented" section, the issue is waived. *See Nagle v. Alspach*, 8 F.3d 141, 143 (3d Cir. 1993) ("When an issue is either not set forth in the statement of issues presented or not pursued in the argument section of the brief, the appellant has abandoned and waived that issue on appeal."). Arismendy has also failed to include a summary of his arguments. Nonetheless, it appears that Arismendy argues that his convictions for first and third degree assault should have merged. Indeed he "asserts that in accordance with the case of *Government of the Virgin Islands v. Joseph*, 685 F.2d 857, 865-7 (3rd [sic] Cir. 1982), that all charges for assault in the third degree, and in which plaintiff was sentenced to consecutive sentences merged into the greater charges for Assault in the first degree. Otherwise, it subjects Appellant to double jeopardy, since they are the same offense for double jeopardy purposes." (Appellant's Brief 20-21.)

review where an appellant challenges his conviction on double jeopardy grounds is plenary. *United States v. Aguilar*, 849 F.2d 92, 95 (3d Cir. 1988) (citation omitted).

### III. DISCUSSION AND ANALYSIS

#### A. Allegations of Prosecutorial Misconduct

##### 1. Failure to disclose impeachment evidence

Arismendy argues that the prosecutor failed to produce *Brady* material, in violation of his due process rights to a fair trial. "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). The holding in *Brady* was extended to include impeachment evidence. *Giglio v. United States*, 405 U.S. 150, 154 (1972); *see also United States v. Risha*, 445 F.3d 298 (3d Cir. 2006) ("Of course, a failure of the prosecution to disclose impeachment evidence, coupled with a duty to disclose, would result in a *Brady* violation.").

To prove a *Giglio* violation, the defendant must show that (1) the government withheld evidence, (2) the evidence was favorable, either because it was exculpatory or has impeachment value, and (3) the withheld evidence was material. *See Risha*, 445 F.3d at 303 (applying the three-part *Brady* test where impeachment

evidence was withheld). Failure to show any of the three prongs is fatal to a *Brady* claim. *See United States v. Higgs*, 713 F.2d 39, 42 (3d Cir. 1983) ("A finding that evidence is exculpatory to the accused does not end the inquiry, however, as *Brady* only requires that material evidence be disclosed by the prosecution.").

Arismendy first argues that the prosecution did not provide impeachment information regarding Willett's prior arrest in 1999. "When the reliability of a given witness may well be determinative of guilt or innocence, nondisclosure of evidence affecting credibility," such as impeachment evidence, may require a new trial. *See Giglio*, 405 U.S. at 154 (quotation omitted).

Here, the Government failed to disclose Willett's prior arrest, satisfying the first prong of the *Brady* test. Nevertheless, Arismendy cannot satisfy the remaining prongs. A witness' criminal history may be regarded as impeachment evidence under *Brady*. *Felix v. Government of the Virgin Islands*, Crim. App. No. 2004-108, 2005 WL 3077599, *7 (D.V.I. App. Div. 2005). However, impeachment evidence is generally limited to convictions, because "[a]rrest without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty." *Id.* (quoting *Michaelson v. United States*, 335 U.S.

469, 482 (1948)). The information withheld in this instance was that Willett was arrested in 1999. There is no indication in the record that she was convicted. As such, there was no impeachment evidence for the government to disclose and Arismendy has failed to establish a *Brady* or *Giglio* violation.

Arismendy next argues that the prosecutor failed to disclose Willett's prior contacts with the prosecutor's office. He does not cite any authority for the proposition that prior witness contacts with the prosecution are favorable because they are either exculpatory or can be used for impeachment. Despite an extensive search, this Court has been unable to find a case holding that a witness' prior contacts with the prosecution has exculpatory or impeachment value. Arismendy has failed to show the first prong existed in this case -- that the evidence was helpful to his case. Accordingly, he has failed to show there was a *Brady* violation.

### 2. Failure to confer with counsel

Arismendy further argues that his right to counsel was violated because his interpreter was barred from the BOC when his attorney came to discuss a plea offer from the prosecution. Arismendy did not raise this issue at trial,[2] and therefore the

---

[2] This issue was raised for the first time in a post-trial motion to the trial court. There is no record of a ruling on this motion.

Court will review the issue for plain error. *See, e.g., United States v. Jackson*, 443 F.3d 293, 301 (3d Cir. 2006)("Because Jackson did not preserve this objection at trial, we review it on appeal only for plain error." (citing *United States v. Couch*, 291 F.3d 251, 252-253 (3d Cir. 2002)). Plain error is that which "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Sanchez v. Government of the Virgin Islands*, 921 F. Supp. 297, 300 (D.V.I. App. Div. 1996) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

Arismendy claims that he was harmed by his counsel's inability to discuss the plea offer with him on March 21, 2004. On March 25, 2004, four days before trial, the prosecutor faxed another offer to Arismendy. In that document, the government extended an offer to Arismendy to plead not guilty by reason of insanity, and participate in one year of drug rehabilitation. That plea offer was never accepted.

It is axiomatic that "there is no constitutional right to plea bargain." *United States v. Gonzalez-Vazquez*, 219 F.3d 37, 43 (1st Cir. 2000); *accord Weatherford v. Bursey*, 429 U.S. 545, 561 (1977). Arismendy can claim no error for his inability to accept a plea offer. Indeed, Arismendy's cure was to proceed to trial. *See Weatherford*, 429 U.S. at 561 ("there is no constitutional right to plea bargain; the prosecutor need not do so if he

prefers to go to trial."). Because Arismendy had no right to a plea bargain, it was not plain error for the court to allow the trial to proceed.

### 3. Prosecutor's improper remarks at closing

Arismendy argues that the prosecutor's improper remarks at trial denied him due process and a fair trial. Arismendy asserts that during rebuttal the prosecutor improperly remarked on the expert's lack of a firm conclusion as to Arismendy's state of mind at the time of the incident. Arismendy did not object to this statement at trial and therefore the Court reviews for plain error. *United States v. Brennan*, 326 F.3d 176, 182 (3d Cir. 2005) ("Any non-contemporaneous objections are subject to plain error review.") (citations omitted). Plain error is found where the fundamental fairness of a trial is undermined, resulting in a miscarriage of justice. *See United States v. Young*, 470 U.S. 1, 16 (1985)(defining plain errors as those which "seriously affect the fairness, integrity or public reputation of judicial proceedings").

While a prosecutor may "prosecute with earnestness and vigor," and may "strike hard blows, he is not at liberty to strike foul ones." *United States v. Young*, 470 U.S. 1, 7 (1985) (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). As such, a prosecutor must "refrain from improper methods calculated

to produce a wrongful conviction." *Young*, 470 U.S. at 7 (quoting *Berger*, 295 U.S. at 88). "The prosecutor is entitled to considerable latitude in summation to argue the evidence and any reasonable inferences that can be drawn from that evidence." *United States v. Werme*, 939 F.2d 108, 117 (3d Cir. 1991) (citing *United States v. Scarfo*, 685 F.2d 842, 849 (3d Cir. 1982)). The proper inquiry is whether the prosecutor's remark about the expert were sufficiently prejudicial to violate due process, given the context of the entire trial. *See Id.* (citing *Scarfo*, 685 F.2d at 849).

During rebuttal, the prosecutor stated, "[a]nd you will find nothing in this report that says that he suffered from a disease at the time he committed the incident. Nothing. And that's all we're here for." (J.A. 156.) The prosecutor was correct that the expert report did not say Arismendy suffered from a disease of the mind at the time of the attack. The report said that at the time of the attack "Mr. Arismendy was not competent and was not aware of his actions." (J.A. 61) It also said that the events during the attack "were the direct result of a mental disorder he suffered, and that he was not mentally competent and that he was unable to understand the consequences of his actions." (*Id.* at 58.) The prosecutor was perhaps making a fine distinction, that Arismendy was not suffering from a disease of the mind, even

though the expert report said the attack was a result of his mental disorder. Regardless of the fact that this is a very fine distinction, the entire expert report was admitted into evidence. The jury members were able to review the expert's exact findings, if they wished. As such, the prosecutor's remarks were not improper in the context of all the available evidence.

Additionally, the trial court instructed the jury that the jury decides whether a defendant has a mental disease after evaluating all the lay and medical evidence produced at trial. Accordingly, the prosecutor's comments do not constitute plain error.

### B. Double Jeopardy

Arismendy also argues that receiving sentences for his first degree assault and third degree assault convictions violated the double jeopardy clause of the U.S. Constitution. Specifically, Arismendy argues that once he was found guilty of assault in the first degree, any punishment for the lesser included offenses of assault in the third degree should have merged into the greater sentence.

The double jeopardy clause protects a criminal defendant in three ways. It "protects against a second prosecution for the same offense after acquittal . . . against a second prosecution for the same offense after conviction . . . [and] against

multiple punishments for the same offense." *Brown v. Ohio*, 432 U.S. 161, 165 (1977) (quoting *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)).

In assessing whether the prohibition on multiple punishments applies to Arismendy's convictions, this Court is guided by the test enunciated in *Blockburger v. United States*. *United States v. Hodge*, 211 F.3d 74, 78 (3d Cir. 2000). This Court must ask whether each of the two statutes under which Arismendy was convicted requires "proof of a fact which the other does not," such that the defendant can be prosecuted under both for a single act. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932); *see also Gov't of the Virgin Islands v. Brathwaite*, 782 F.2d 399, 406 (3d Cir. 1986) ("*Blockburger* provides established test for determining whether two offenses are sufficiently distinguishable to permit imposition of cumulative punishment")(quoting *Brown v. Ohio*, 432 U.S. 161 (1977)). "The elements of the offense are compared in the abstract, without looking to the facts of the particular case." *Gov't of the Virgin Islands v. Bedford*, 671 F.2d 758, 765 (3d Cir. 1982) (citations omitted).

The first degree assault statute prohibits attempting or threatening the use of violence during the commission of any one

of several enumerated crimes.[3] In order to prove that a defendant is guilty of first degree assault, the government must prove that (1) the defendant made an assault upon the victim resulting in the victim being put in fear of immediate bodily harm, and (2) that he did so with the specific intent to commit one of the enumerated crimes against the victim. *Cf. Gov't of the Virgin Islands v. Greenidge*, 600 F.2d 437, 439 (3d Cir. 1979) (noting that elements of first degree assault, where underlying crime intended was rape are: "(1) that the defendant made an assault upon the complainant; and (2) that he did so with specific intent to have intercourse with the complainant; and (3) that he intended to achieve penetration of the complainant's sexual organs against her will and by using such force or threat of force as might be necessary to overcome resistance or make further resistance useless."); *Gov't of the Virgin Islands v. Brown*, 685 F.2d 834, 841 (3d Cir. 1982) ("The jury should have been instructed [on first degree assault] that in addition to the other essential elements, the government had to prove beyond a reasonable doubt that the defendants intended to rob the

---

[3] The first degree assault statute under which Arismendy was convicted provides, in relevant part, "[w]hoever . . . with intent to commit rape, sodomy, mayhem, robbery or larceny, assaults another--shall be imprisoned not more than 15 years." V.I. CODE ANN. tit. 14, § 295(3) ("§ 295(3)"). Assault is defined as attempting to use "any unlawful violence upon the person of another with intent to injure him," or making "a threatening gesture showing in itself an immediate intention coupled with an ability to" use unlawful violence. V.I. CODE ANN. tit. 14, §§ 291, 292.

particular victim on whom the assault was perpetrated.").

The third degree assault statute under which Arismendy was convicted prohibits assault either with a deadly weapon, by means intended to inflict great bodily harm, or where serious bodily harm results.[4]

A first degree assault conviction always requires proof of an element that a third degree assault conviction does not, namely intent to commit one of the crimes enumerated in the statute. Likewise, an essential element that the government must prove in order to sustain a conviction for third degree assault with a deadly weapon is the use of a deadly weapon. That is not an essential element to prove first degree assault. As such, third degree assault with a deadly weapon is not a lesser included offense of assault in the first degree. *See, e.g., Gov't of the Virgin Islands v. Bedford*, 671 F.2d 758, 765 (3d Cir. 1982) ("we find that the district court was incorrect in holding that assault with a deadly weapon is a lesser included offense of

---

[4] The third degree assault statute provides, in relevant part:

Whoever, under circumstances not amounting to an assault in the first or second degree-- . . .
    (2) assaults another with a deadly weapon;
    (3) assaults another with premeditated design and by use of means calculated to inflict great bodily harm;
    (4) assaults another and inflicts serious bodily injury upon the person assaulted; . . .
shall be fined not less than $500 and not more than $3,000 or imprisoned not more than 5 years or both.

V.I. CODE ANN. tit. 14, § 297.

assault with intent to rob").

Similarly, in order to prove assault in the third degree, as described in V.I. CODE ANN. tit. 14, § 297(3), the government must prove that (1) the defendant made an assault upon the victim, (2) the assault was premeditated, and (3) the defendant used means which he knew could inflict great bodily injury. Third degree assault as described in § 297(3) requires an element that a first degree assault conviction does not, namely use of means which the assailant knows can inflict great bodily injury.

In order to prove assault in the third degree, as described by V.I. CODE ANN. tit. 14, § 297(4), the government must prove (1) the defendant made an assault upon the victim, (2) resulting in serious bodily injury. *See Gov't of the Virgin Islands v. Knowles*, 20 V.I. 94, 96 (Terr. Ct. 1983). Assault in the third degree, as described in § 297(4), requires an element not required to prove first degree assault, namely that serious bodily injury results from the assault. Because the two provisions each require proof of an element the other does not, they pass the *Blockburger* test. As such, Arismendy's convictions under the three different subsections of the third degree assault statute were not for lesser included offenses of first degree assault. The double jeopardy clause was not offended by Arismendy receiving separate sentences for each of those

convictions.

## IV. CONCLUSION

Accordingly, this Court will affirm Arismendy's convictions and sentence. An appropriate order accompanies this memorandum opinion.